**Milton Paul HUFF, Petitioner,**

v.

**Patsy Ann HUFF, Respondent.**

No. C–1266.

Supreme Court of Texas.

March 16, 1983.

Rehearing Denied April 27, 1983.

Jim Sharon Bearden, Orange, for petitioner.

Joseph D. Loidold, Port Arthur, for respondent.

WALLACE, Justice.

This is a motion to reduce past due child support to judgment pursuant to § 14.09(c) of the Texas Family Code. The trial court rendered judgment for Patsy Ann Huff in the amount of $28,098.51, representing unpaid child support for the period from October 9, 1973 to May 1, 1979. The court of appeals affirmed the judgment of the trial court. 634 S.W.2d 5. We affirm the judgment of the court of appeals.

Patsy Ann Huff and Milton Huff were divorced on October 19, 1973. Patsy was named managing conservator of the couple's four children and Milton was ordered to pay child support through the District Clerk's office in the amount of $500 per month until the youngest child reached the

age of 18. No payments were made through the District Clerk's office. The youngest child reached 18 years of age in May of 1979. In January of 1979, Patsy filed this motion to reduce the unpaid child support to judgment. At all times pertinent to this action, Milton has resided in Arizona. Following a hearing at which the court heard conflicting testimony as to the amount of child support paid directly to Patsy as well as Milton's contention that he was physically unable to work, the court entered judgment for Patsy. The only point before us is whether the general four-year statute of limitation [1] or the ten-year statute of limitation for the renewing and enforcement of judgments [2] should apply in this case.

It is Milton's contention that the four-year statute should apply. He argues that a motion under § 14.09(c) of the Family Code is an independent claim for relief and not an action to enforce a final judgment. He cites as authority *Ex Parte Payne,* 598 S.W.2d 312 (Tex.Civ.App.—Texarkana, 1980, no writ) and *Ex Parte McNemee,* 605 S.W.2d 353 (Tex.Civ.App.—El Paso 1980, no writ). The court in *Payne* found the four-year statute applicable as a matter of policy. *Id.* at 317–318. *See, in contrast, for courts of appeals applying the ten-year statute, Mitchell v. Mitchell,* 575 S.W.2d 311 (Tex.Civ.App.—Dallas 1978, no writ); *Houtchens v. Matthews,* 557 S.W.2d 581 (Tex.Civ.App.—Fort Worth 1977, writ dism'd).

We note at the outset that a divorce decree which awards child support is a final judgment. "This is true even though por-

tions of the judgment with respect to property were to be performed by parties in the future, and even though the trial court has the power under Section 14.08, Texas Family Code, V.T.C.A. ... to modify or change provisions relating to custody and support of minor children under certain circumstances." *Schwartz v. Jefferson,* 520 S.W.2d 881, 887 (Tex.1975); *see also Curtis v. Gibbs,* 511 S.W.2d 263, 266 (Tex.1974); *McAfee v. McAfee,* 152 Tex. 156, 255 S.W.2d 185, 186 (1953). The only traditional distinction between final divorce decrees and other final judgments has been the remedies available for their enforcement. Since the early periods of Texas jurisprudence, divorce has been treated exclusively as a matter of equity even though Texas has never had a separate equity court. As a judgment in equity, a divorce decree operates only in personam. Prior to enactment of the Family Code in 1973, the sole remedy for the enforcement of a final divorce decree had been an action for contempt brought in the court that issued the decree. *See, for discussion, Ex Parte Barnett,* 600 S.W.2d 252, 254–255 (Tex.1980).[3] Parties to a divorce did not have the additional at-law option of seeking an in rem execution on such a final judgment in equity. This situation often rendered support awards useless because the spouse to whom back payments were owed would be left without a practical means of collecting them if, as in the instant case, the defaulting spouse had left the jurisdiction of the court that had issued the final decree.

In 1973, the Legislature expanded the jurisdiction of the trial court to allow in

---

1. Tex.Rev.Civ.Stat.Ann. art. 5529.

2. Tex.Rev.Civ.Stat.Ann. art. 5532.

3. *Barnett* expanded the common law remedy of contempt by holding that the legislative intent of an allowance for a transfer of the jurisdiction over a divorce case from the original court to another court under § 11.06 of the Family Code also inferably included an allocation of the contempt power to the transferee court. Our holding in *Barnett* let a district court in Collin County cite a defaulting spouse for a contempt committed before a Dallas County court prior to the case's transfer to Collin

County. This Court overruled more than half a century of its own precedent on the limitation of the contempt remedy in order to effectuate the inferable intent of the Legislature to expand the remedies for child support ordered in divorce decrees. *Id.* at 255. Our holding in the instant case follows the policy of *Barnett.* We are simply giving effect to § 14.09(c) as a new in rem enforcement provision for adjudicated child support claims under divorce decrees as this section has been explicitly so designated by the Legislature in enacting Chapter 14 of the Family Code.

rem enforcements of the support portion of a divorce decree under § 14.09(c) of the "Enforcement of Order" provision of the Texas Family Code. *See* Acts 1973, 63rd Leg., ch. 543, p. 1426.[4] We find that the purpose of this section was to facilitate the enforcement of final decrees providing for child support. If a claim for child support is brought as part of an action for a divorce and is then disposed of by the court as part of the divorce adjudication, we presume that once the period for an appeal has run the claim for child support becomes part and parcel of a final judgment. The claim is precluded from further relitigation by operation of the law of res judicata. We have unequivocally held that the possibility of a prospective modification of support payments under § 14.08(c)(2) does not in any way diminish the nature of a divorce decree as a final judgment in this regard.[5] *Schwartz v. Jefferson,* 520 S.W.2d at 887; *see also* § 13, Comment c, Restatement (Second) of Judgments.[6]

A § 14.09(c) motion is an in rem parallel to a motion for constructive contempt under § 14.09(a). Both must be predicated by their pleadings on a valid final judgment. Tex.R.Civ.P. 55. If a claimant seeks to assert either a § 14.09(a) or a § 14.09(c) remedy after the ten-year statute of limitation for reviving and enforcing a dormant final judgment has passed,[7] the trial court passing on the motion is without jurisdiction to grant any form of relief because the final judgment will have become void of lawful effect by operation of law. *See* Art. 5532; § 74(2), Restatement (Second) of Judgments. *See also* Art. 1911a, § 1 (limiting a court's contempt powers to the enforcement of lawful orders).

Both the *Payne* and *McNemee* courts apparently assumed that Art. 5529, the four-year catchall statute of limitation, would apply in a situation such as this because § 14.09(c) actions, in their opinion, were collateral claims for relief not covered by any other statute of limitation. *See Payne,* 598 S.W.2d at 319, and *McNemee,* 605 S.W.2d at 358. In *Adair v. Martin,* 595

---

**4.** Section 14.09 of the Texas Family Code provides:

(a) Any order of the court may be enforced by contempt.

(b) A court may enforce an order for support as provided in Rule 308A of the Texas Rules of Civil Procedure or any subsequent version of the rule promulgated by the Supreme Court.

(c) On the motion of any party entitled to receive payments for the benefit of a child, the court may render judgment against a defaulting party for any amount unpaid and owing after 10 days' notice to the defaulting party of his failure or refusal to carry out the terms of the order. The judgment may be enforced by any means available for the enforcement of judgments for debts.

(d) A parent may be compelled to testify fully in regard to his ability to support the child.

**5.** In *Gard v. Gard,* 150 Tex. 347, 241 S.W.2d 618 (1951), this Court held that support provisions of foreign divorce decrees, although subject to prospective modification, are enforceable in Texas under the Full Faith and Credit Clause of Art. IV, § 1 of the Constitution. We specifically said that " ... [the] petitioner's judgment in that State [Idaho] was as final as any judgment for debt could be, although it was subject to later modification, as to installments not matured, for changed conditions on application of either party." *Id.* 241 S.W.2d at

619; see and compare *Sistare v. Sistare,* 218 U.S. 1, 16–17, 30 S.Ct. 682, 686, 54 L.Ed. 905 (1910). The *Sistare* standard for enforcement of orders of a divorce decree pursuant to the Full Faith and Credit Clause was specifically adopted by this Court in *Gard. Id.* 241 S.W.2d at 619; see also § 21.66 of the Texas Uniform Reciprocal Enforcement of Support Act (enacted with Chapter 14 of the Family Code).

**6.** Restatement (Second) of Judgments, § 13, Comment c:

*Judgments granting or denying continuing relief.* A judgment concluding an action is not deprived of finality for purposes of res judicata by reason of the fact that it grants or denies continuing relief, that is, requires the defendant, or holds that the defendant may not be required, to perform acts over a period of time. Judgments of these types are rendered typically in actions for injunctions, specific performance, alimony, separate maintenance, and child support and custody.

**7.** For a discussion of the minimum requirements for reviving dormant final judgments, see, *Commerce Trust Co. v. Ramp,* 135 Tex. 84, 138 S.W.2d 531, 536 (1940); *Hopkins v. Howard,* 12 Tex. 7 (1854); *Simmons v. Zimmerman Land & Irrigation Co.,* 292 S.W. 973, 975 (Tex.Civ.App.—El Paso 1927, no writ).

S.W.2d 513 (Tex.1980), however, this Court affirmed a court of appeals analysis of a § 14.09(c) motion as an enforcement remedy to assure the payment of child support previously ordered in a final divorce decree. This case involved a § 14.09(c) motion filed by Ms. Adair in 1975 against her former husband's estate to collect past due child support he had owed under a divorce decree issued in 1960. In upholding the validity of the motion as an enforcement of the decree, the Court specifically indicated that a § 14.09(c) remedy was not an independent claim for indebtedness. *Id.* at 514; *see also Smith v. Bramhall,* 556 S.W.2d 112 (Tex.Civ. App. Waco 1977) *writ ref'd n.r.e. per curiam,* 563 S.W.2d 238 (Tex.1978) (making the same distinction between § 14.09(c) and a collateral claim for a debt).

The inference to be drawn from this Court's writings in *Adair* and *Smith* is that a motion under § 14.09(c), like a motion for contempt under § 14.09(a) of the same statute, is but one of several means specifically provided by the Legislature to enforce judgments awarding child support. As a matter of the law of res judicata, such motions are clearly not separate claims that would come under the Art. 5529 catchall statute of limitation because the original divorce decree has precluded any further adjudication of a right to child support.[8] For a setting out of the law of res judicata, *see Ogletree v. Crates,* 363 S.W.2d 431, 435–436 (Tex.1963); *Freeman v. McAninch,* 87 Tex. 132, 27 S.W. 97, 100 (1894). The fact that a parent facing sanctions under § 14.09(a) or § 14.09(c) has a right to be heard on the issue of arrearages does not mean the claim for child support is being relitigated. To the contrary, we have held that such hearings, as in the charge of contempt, are provided to guarantee due process of law, not a de novo hearing on the right to support. For a discussion of required procedural protections in cases of constructive contempt, *see Ex Parte White,* 149 Tex. 155, 229 S.W.2d 1002, 1004 (1950); *Id.* 229 S.W.2d at 1005 (Garwood, J., dissenting).

As motions to revive and enforce portions of a final judgment awarding child support, § 14.09(c) actions come within the direct purview of the statute of limitation governing the revival and enforcement of judgments, Art. 5532, the ten-year statute. Inasmuch as § 14.09(c) motions are included within the prescription of Art. 5532 to deal with the revival and enforcement of judgments, they are excluded from the ambit of Art. 5529 by the very language of that statute which narrows its application to only those "... action[s] ... for which *no limitation is otherwise prescribed* ...." (emphasis added).

On the basis of a plain reading of the statutes of limitation, the provision of § 14.09(c) as it appears under the title of "Enforcement of Order," and our prior holdings in *Adair* and *Smith* that interpret § 14.09(c) as an enforcement remedy, it is incumbent upon this Court to follow its own precedent as well as implement the Legislature's clear plan to augment the remedies available for the effective enforcement of child support orders. The ten-year statute of limitation must therefore apply to § 14.09(c) motions as it does to motions for contempt under § 14.09(a). We are no more able to limit § 14.09(c) in rem remedies than we would be able to limit the contempt power of the court under § 14.09(a). If we were to do so, we would be opening the door to the wholesale frustration of the ten-year statute of limitation for all final

8. There is only one final judgment enforceable under Chapter 14, and that is the original divorce decree awarding a right to child support unless it has subsequently been modified under § 14.08(c)(2). Once the claim for child support has been adjudicated in a proceeding where a final divorce decree is subsequently rendered, the adjudication of the claim is merged in that single final judgment and barred from further relitigation as a matter of res judicata. See, for a setting out of the principle of res judicata, *Ogletree v. Crates,* 363 S.W.2d 431, 435–436 (Tex.1963); *Freeman v. McAninch,* 87 Tex. 132, 27 S.W. 97, 100 (1894). We therefore disapprove the analysis offered by *Houtchens,* that each accrued support payment somehow becomes a separate final judgment. *Id.* at 587. This is incorrect. As support payments accrue, they become immune to modification because the trial court has no jurisdiction to retroactively modify support payments under § 14.08(c)(2); they are not separate final judgments.

judgments in this important area of family law. Such a usurpation of the legislative. function is beyond the jurisdiction of this Court. We therefore disapprove *Payne* and *McNemee* and affirm the judgment of the court of appeals.

RAY, J., files a dissenting opinion in which BARROW, CAMPBELL and KILGARLIN, JJ., join.

RAY, Justice, dissenting.

I respectfully dissent.

The parties to this suit were divorced in October 1973. Milton Huff was ordered to pay $500.00 per month in child support through the district clerk's office until the youngest child reached the age of eighteen. Prior to January 1979, when this suit was filed, Patsy Huff made no attempt to collect alleged unpaid child support.

In response to Patsy's motion to reduce the arrearages to judgment under section 14.09(c) of the Texas Family Code, Milton pleaded the four-year statute of limitations. Tex.Rev.Civ.Stat.Ann. art. 5529. His plea in bar was to any claim made by his former wife for past due child support accruing prior to January 1975. At the hearing on the motion, the trial court heard conflicting testimony as to the amount of child support paid directly to Patsy, as well as Milton's ability to work and to make the support payments. I respectfully submit that the courts below and the majority of this Court have incorrectly applied the ten-year statute of limitations regarding the revival and enforcement of judgments. Tex.Rev.Civ. Stat.Ann. art. 5532. I would disapprove those cases which have held the ten-year statute of limitations to be applicable in an action brought under section 14.09(c) to reduce child support payments to a judgment, reverse the judgments of the courts below and remand the cause to the trial court.

Section 14.09 provides two remedies for the collection of unpaid child support ordered by the court:

(a) Any order of the court may be enforced by contempt.

\*　　\*　　\*　　\*　　\*　　\*

(c) On the motion of any party entitled to receive payments for the benefit of a child, *the court may render judgment against a defaulting party for any amount. unpaid and owing after 10 days' notice to the defaulting party of his failure or refusal to carry out the terms of the order. The judgment may be enforced by any means available to the enforcement of judgments for debts.* (Emphasis added.)

Milton contends this statute provides two remedies for the single action of collecting past due child support payments. *See Ex parte Payne,* 598 S.W.2d 312 (Tex.Civ.App. —Texarkana 1980, no writ); *Ex parte McNemee,* 605 S.W.2d 353 (Tex.Civ.App.— El Paso 1980, no writ). He also asserts the order of child support installments does not constitute a final judgment on which execution can be issued. Since article 5532 only applies to final judgments, Milton urges us to apply the rule as stated in *Ex parte Payne,* 598 S.W.2d 312, in which the court of civil appeals applied the four-year "catch-all" statute of limitations in article 5529 to a section 14.09(c) action.

The court of appeals in the instant case held the ten-year statute of limitations applied to a motion under section 14.09(c) of the Family Code following the line of cases lead by *Houtchens v. Matthews,* 557 S.W.2d 581, 585 (Tex.Civ.App.—Fort Worth 1977, writ dism'd) and *Martin v. Adair,* 601 S.W.2d 543 (Tex.Civ.App.—Beaumont 1980, no writ). These cases held that as each installment payment became delinquent, it also became a final judgment pursuant to section 14.08(c)(2) of the Family Code.[1] They further held the intention of the legislature in enacting section 14.09(c) was only to create an additional enforcement mechanism and not a new claim for relief. I disagree with the rationale of those cases construing section 14.09(c).

---

1. While the Texas Family Code provides that a court may modify an order or portion of a decree, "an order providing for the support of a child may be modified only as to obligations accruing subsequent to the motion to modify." Tex.Fam.Code Ann. § 14.08(c)(2).

I strongly note that section 14.09(c) permits the court to "*render judgment* against a defaulting party for any amount unpaid and owing." The implication is such that the legislature intended to create a separate and distinct remedy to collect unpaid child support. The express language of section 14.09(c) requires a party claiming past due support to acquire a judicial ascertainment and declaration of arrearages before any execution will be available.

Prior to the adoption of the Texas Family Code, an order of child support could not be judicially enforced as other final judgments. *See Burger v. Burger,* 156 Tex. 584, 298 S.W.2d 119 (1957). Contempt had been the only remedy available to collect unpaid child support.[2] Section 14.09 now provides two separate *remedies* for an action to collect child support. In addition to the contempt remedy permitted under subsection *(a),* subsection *(c)* enables any party entitled to payments for child support to collect those arrearages provided the court has rendered judgment against the defaulting party for the amount unpaid. *Adair v. Martin,* 595 S.W.2d 513 (Tex.1980). Although payments under section 14.08(c)(2) may become vested and unmodifiable as they accrue, the claimant is not relieved of the necessity of bringing an action in accordance with section 14.09(c) to have the arrearages judicially determined. Until the amount is reduced to a judgment, the order to pay child support should only be considered a right to reduce the payment to a judgment and not a final judgment upon which execution can be issued.

The distinction between sections 14.09(a) and 14.09(c) is a subtle one. A defaulting party may be held in contempt of the court's order to make the payments until he purges himself. Yet it is not until the arrearages have been reduced to judgment that the managing conservator may seek execution for the liquidated sums. The interpretation of the subsections as separate *remedies* rather than as two *means* to achieve the same goal is a clearer and more effective construction of the statute. The majority opinion, on the other hand, blurs the substantive distinctions between the two subsections. The practical effect of the majority's construction creates a redundancy between the subsections since no real purpose would be served by the enactment of subsection *(c).* Such a construction is therefore improper. *See Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547 (Tex. 1981).

There is an important distinction to be made between the court's decree dissolving the marriage bonds of a husband and wife, and the court's appointment of managing and possessory conservators and order of child support payments. The divorce action is separate and distinct from the suit affecting the parent-child relationship. A divorce action is prosecuted under Title 1 of the Family Code, while child custody and support matters are determined under Title 2 of the Code. Once a court acquires jurisdiction of a suit affecting the parent-child relationship, that court retains *continuing* jurisdiction of all matters provided for under Title 2 of the Family Code in connection with the child. Tex.Fam.Code Ann. § 11.-05. Thus, the majority's reliance on the history of *divorce* judgments is misplaced.[3]

A divorce decree which includes an order for child support is a final judgment with respect to the dissolution of the marriage and division of marital property, *Schwartz v. Jefferson,* 520 S.W.2d 881, 887 (Tex.1975), and for purposes of appeal. *McAfee v. McAfee,* 152 Tex. 156, 255 S.W.2d 185, 186 (1953). Child support installment payments, however, are not considered final judgments for the purposes of the statute of limitations. A provision for child sup-

2. *Ex parte Birkhead,* 127 Tex. 556, 95 S.W.2d 953, 955 (1936). *See* Comment, *Enforcement of Unpaid Child Support Payments Against a Decedent's Estate,* 32 Baylor L.Rev. 269, 271 (1980).

3. I recognize this Court's holdings that for jurisdictional purposes on appeal, child custody and support matters are considered as "cases of divorce" within the meaning of Tex.Rev.Civ. Stat.Ann. art. 1821 § 3. *Aversa v. Aversa,* 407 S.W.2d 769 (Tex.1966); *Longoria v. Longoria,* 160 Tex. 134, 327 S.W.2d 453 (1959).

port payment in the future must be distinguished from an award of a definite lump sum amounting to a final judgment, due and payable upon the date of the decree and upon which execution may issue.

This Court has already decided that child support arrearages are not debts.[4] Yet once reduced to judgment, they may be enforced by the same means as a judgment for a debt. *Adair v. Martin, supra; Smith v. Bramhall,* 556 S.W.2d 112 (Tex.Civ.App.—Waco 1977), *writ ref'd n.r.e. per curiam,* 563 S.W.2d 238 (Tex.1978). Because orders to pay child support must be reduced to judgment, I would hold the ten-year statute concerning revival and enforcement of judgments[5] inapplicable to 14.09(c) actions until a court has actually reduced the past due payments to a judgment. Since no limitations period is specified, the four-year "catch-all" statute must apply. Tex.Rev.Civ.Stat.Ann. art. 5529.[6] *See Ex parte Payne, supra,* and *Ex parte McNemee, supra.* In an action to collect arrearages of child support payments due and payable, the statute would begin to run as each installment became due.

The purpose of statutes of limitations is to compel the exercise of a right of action within a reasonable time, so that the opposing party has a fair opportunity to defend while the evidence upon which the enforcement of the claim or the basis of defense is still fresh in the minds of the parties and their witnesses. *Robinson v. Weaver,* 550 S.W.2d 18 (Tex.1977). They are in the nature of statutes of repose, requiring diligence in enforcing rights and putting an end to litigation. *Moya v. O'Brien,* 618 S.W.2d 890 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

The harmful effects of the majority's opinion go beyond a misconstruction of the statute, and are well illustrated by the facts of this case. Often in the case of child support orders, side-bar or informal agreements are reached between the parties as to the method, time and/or amount of payment which are not in strict compliance with the court's order. Uncertainty of proof over a period of years places an intolerable strain upon the judiciary, a burden which the statutes of limitation seek to prevent. Inasmuch as I construe article 5529 to apply to actions brought under section 14.09(c) of the Family Code, I believe it is now within the province of the legislature to correct this Court's construction of section 14.09 of the Family Code and the statutes of limitations as pronounced by the majority opinion.

BARROW, CAMPBELL and KILGARLIN, JJ., join in this dissenting opinion.

---

**4.** This determination was made in recognition of our constitutional prohibition against imprisonment for debts which would have precluded our use of contempt as a collection remedy.

**5.** Tex.Rev.Civ.Stat.Ann. art. 5532.

**6.** Tex.Rev.Civ.Stat.Ann. art. 5529 provides:

Every action other than the recovery of real estate for which *no limitation is otherwise prescribed* shall be brought within four years next after the right to bring the same shall have accrued and not afterward. (Emphasis added).